```
 1  Miles M. Cooley, Esq. (SBN: 206783)
    Summer E. Benson, Esq. (SBN: 326398)
 2  FREEDMAN + TAITELMAN, LLP
 3  1801 Century Park West, 5th Floor
    Los Angeles, California 90067
 4  Telephone: (310) 201-0005
 5  Facsimile:  (310) 201-0045
    Email: mcooley@ftllp.com
 6         sbenson@ftllp.com
 7
    Attorneys for Plaintiff Bellrose Marketing Limited
 8
```

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELLROSE MARKETING LIMITED, a British Virgin Islands company,<br><br>      Plaintiff,<br><br>      vs.<br><br>H2O CRUISES LLC, a California limited liability company; SAMUEL PENHOS, an individual; and DOES 1-10, inclusive,<br><br>      Defendants. | Case No.: '23CV1736 JAH DDL<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(3) BREACH OF FIDUCIARY DUTY;**<br>**(4) INTENTIONAL MISREPRESENTATION;**<br>**(5) NEGLIGENT MISREPRESENTATION; and**<br>**(6) FRAUDULENT INDUCEMENT**<br><br>**[DEMAND FOR JURY TRIAL]** |

COMPLAINT

Plaintiff Bellrose Marketing Limited ("Plaintiff" or "Bellrose") hereby alleges the following causes of action against Defendants H2O Cruises LLC ("H2O"); Samuel "Sammy" Penhos ("Penhos"); and DOES 1-10, inclusive:

## JURISDICTION AND VENUE

1. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2), in that this is an action between a plaintiff who is a citizen of a foreign state and defendants who are all citizens of States within the United States in which the amount in controversy exceeds the jurisdictional minimum of this Court.

2. Venue is proper in this District under 28 U.S.C. § 1391(b), in that the defendants named herein are subject to the personal jurisdiction of this Court in this District. Specifically, the named defendants herein are residents of this District and/or a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

3. Plaintiff is, and was at all relevant times herein, a British Virgin Islands company organized and existing under the laws of the British Virgin Islands, with its principal place of business located at Trident Chambers 146 Wickhams Cay Roadtown, British Virgin Islands.

4. Plaintiff is informed and believes that Defendant H2O is, and was at all relevant times herein, a limited liability company organized and existing under the laws of the State of California, with its principal place of business located at 6617 Muilands Drive, La Jolla, California 92037.

5. Plaintiff is informed and believes that Defendant Samuel Penhos is, and was at all relevant times herein, an individual residing in the County of San Diego, State of California.

6. Plaintiff is informed and believes that Defendant Penhos is, and was at all relevant times herein, a shareholder and/or member of and dominated, controlled, managed, or operated Defendant H2O to such an extent that there existed a unity of

1  interest and ownership between Penhos and H2O. Therefore, Penhos was the alter ego
2  of H2O, and any individuality or separateness of H2O and Penhos have ceased. At all
3  relevant times herein, Penhos committed acts establishing his alter ego liability,
4  including, without limitation, the use of H2O as a mere shell, instrumentality or
5  conduit for a single venture or for his individual business; the disregard of legal
6  formalities and the failure to maintain an arms-length relationship with H2O; and the
7  sole ownership of H2O. As the alter ego of H2O, Penhos orchestrated, ratified and
8  was otherwise involved in the conduct described herein. Thus, adherence to the fiction
9  of a separate existence as between H2O and Penhos would permit an abuse of the
10 limited liability company privilege and would promote injustice by allowing Penhos
11 to evade liability or veil assets.

12        7.    The true names and capacities, whether individual, corporate, associate
13 or otherwise of the Defendants named herein as Does 1-10, inclusive, are unknown to
14 Plaintiff, who therefore sues Doe Defendants by such fictitious names. Plaintiff
15 alleges on information and belief that each of the Defendants, including the Does, are
16 also responsible for the events alleged herein and the damages caused thereby as a
17 principal, agent, co-conspirator, aider and abettor, or alter ego. Plaintiff will seek
18 leave of Court to amend the Complaint to allege the true names and capacities of
19 Defendants when the same is ascertained.

20        8.    Plaintiff is informed and believes that at all times relevant herein, each
21 of the Defendants was the agent, servant, employee, joint-venturer, partner and/or
22 alter ego of each of the named Defendants herein and were at all times operating and
23 acting within the purpose and scope of said agency, service, employment, joint
24 venture, partnership and/or alter ego. Each Defendant has rendered substantial
25 assistance and encouragement to the other Defendants, acting in concert knowing that
26 its conduct was wrongful and/or unlawful, and each Defendant has ratified and
27 approved the acts of each of the remaining Defendants.
28 //

## FACTS COMMON TO ALL CLAIMS

9. In or around June 2021, Penhos approached Salvador Briman ("Briman"), Principal at Bellrose, to pitch a "once-in-a-lifetime" business opportunity. The idea was to charter and dock a 92-suite luxury yacht in the Port of Doha during the 2022 FIFA Work Cup and market VIP accommodations to visitors and attendees of the quadrennial international event (the "Venture"). The voyage was set to commence on November 20, 2022, and end on December 20, 2022.

10. In his early discussions with Briman, Penhos touted his extensive industry experience, referencing collaborations with the likes of Four Seasons, Diamond Club/Dorchester, Mandarin Oriental, and Ritz Carlton. Penhos assured Briman that he had the requisite knowledge, experience, and resources to execute a successful venture—the revenues from which Penhos estimated in excess of $6 million.

11. Relying on Penhos' numerous representations, Bellrose entered into a joint venture agreement with H2O on or about July 1, 2021 (the "Joint Venture Agreement"). A true and correct copy of the Joint Venture Agreement is attached hereto as **Exhibit A** and incorporated herein by this reference.

12. Prior to execution of the Joint Venture Agreement, on May 25, 2021, H2O entered into a charter agreement with La Compagne Du Ponant, a French limited liability company ("Ponant") (the "Charter Agreement"). Pursuant to the terms of the Charter Agreement, H2O was to commandeer a vessel known as Le Jacques Cartier II for $3.9 million. H2O was required to make four separate payments between May 24, 2021 and May 24, 2022, each in the amount of $975,000,

13. To comply with the payment terms under the Charter Agreement, Bellrose and H2O each agreed make the following capital contributions.

| Date: | H20: | Bellrose |
|---|---|---|
| a. Upon execution: | $487,500.00 | $487,500.00 |
| b. 11/18/21: | $487,500.00 | $487,500.00 |

|   |   |   |   |
|---|---|---|---|
| c. | 2/18/22: | $487,500.00 | $487,500.00 |
| d. | 5/18/22 | $487,500.00 | $487,500.00 |
|   | Total: | $1, 950,000.00 | $1,950,000.00 |

(Exh. A, ¶ 5.) Provided H2O and Bellrose timely tendered the aforementioned capital contributions, each would own and hold a 50% interest in the Venture and share in the venture's income, gains, losses, deductions, credits, and cash as available for distribution. (Exh. A, ¶ 6.)

14.   Consistent with its obligations under the Joint Venture Agreement, Bellrose made three separate capital contributions between May 24, 2021, and February 24, 2022, totaling $1,462,500.00. On information and belief, H2O never made a single capital contribution to the Venture and improperly commingled funds.

15.   Separately, the Joint Venture Agreement named H2O as the "managing joint venturer." (Exh. A, ¶ 13.) As part of this role, H2O was contractually required to, *inter alia*, "devote as much of his attention and time to the conduct and supervision of the Venture business as required by the Joint Venture and shall use its commercially reasonable best efforts to achieve its purpose under the highest profit-making principles." (*Id*.) H2O was also required to keep proper books and records with respect to all Venture transactions and exercised discretion over the Venture's finances and accounting practices. (Exh. A, ¶¶ 11, 12.) Unfortunately, H2O and Penhos dropped the ball in all respects.

16.   In the months that followed execution of the Joint Venture Agreement, H2O failed to secure any clients and/or third-party buyers to fill the vessel. Penhos purported to negotiate with several interested corporate buyers and FIFA sponsors, but none of these deals came to fruition. And, in fact, Penhos never provided credible evidence that these negotiations actually occurred. It is also unclear whether Ponant received payment from H2O pursuant to the terms of the Charter Agreement.

17.   As the scheduled departure date neared, communications with Penhos lapsed. When pressed by Briman for answers and documentation regarding the

Venture's financial state (as permitted under the Joint Venture Agreement), Penhos offered evasive and opaque responses. Bellrose, in turn, withheld its final capital contribution payment. Naturally, the Venture crumbled.

18. Since the Venture fell apart, Penhos has become even more elusive and evasive, refusing to respond to Briman's numerous requests for information and transparency surrounding what happened with the Venture in general. It has become abundantly clear that H2O and Penhos never intended to act in accordance with the terms of the Joint Venture Agreement. Indeed, Penhos' "once-in-a-lifetime" business opportunity was merely a hoax designed to defraud Bellrose. This action necessarily follows.

### FIRST CAUSE OF ACTION
### Breach of Contract
### (Against All Defendants)

19. Plaintiff realleges and hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 18 as if set forth in full herein.

20. As alleged hereinabove, on or about July 1, 2021, Defendant Penhos, through his company, Defendant H2O, entered into the Joint Venture Agreement with Plaintiff. The Joint Venture Agreement is a valid and binding contract enforceable in accordance with its terms.

21. Paragraph 5 of the Joint Venture Agreement provides, in relevant part, that "[e]ach Joint Venturer shall contribute an amount equal to fifty percent (50%) of the total price equal to $3,900,000, required for the Venture to purchase the Yacht Charter . . . ." (Exh. A, ¶ 5.) On information and belief, H2O failed to make any of its required capital contributions and, thus, breached the Joint Venture Agreement. On information and belief, H2O also commingled funds with those belonging to the Venture.

22. Paragraph 13 of the Joint Venture Agreement provides, in relevant part, that H2O, as managing joint venturer, is required to, among other things, "devote as much of his attention and time to the conduct and supervision of the Venture business

as required by the Joint Venture and shall use its commercially reasonable best efforts to achieve its purpose under the highest profit-making principles." (Exh. A, ¶ 13.) As demonstrated herein, H2O neither devoted adequate attention and time to the Venture nor used commercially reasonable best efforts to achieve the Venture's purpose. The Venture failed as a result. This constitutes a breach of the Joint Venture Agreement.

23. Paragraph 11 of the Joint Venture Agreement provides, in relevant part, that "[p]roper books and records shall be kept with respect to all Venture transactions" and "[e]ach joint venture shall have access to the Venture books and records at all reasonable times during business hours." (Exh. A, ¶ 11.) On information and belief, H2O failed to keep proper books and records, and refused to accommodate Plaintiff's request to examine the same. This also constitutes a breach of the Joint Venture Agreement.

24. Plaintiff performed, or substantially performed, all of its obligations under the Joint Venture Agreement or was excused from performance as a consequence of H2O's breaches

25. To the extent, if any, that Plaintiff has failed to fulfill any duty under the Joint Venture Agreement, that failure was and is excused by Defendants' misconduct and/or H2O's failure to perform its contractual obligations.

26. As a direct and proximate result of these breaches, Plaintiff has been damaged in an amount according to proof but in no event less than the jurisdictional minimum of this Court.

27. Pursuant to Paragraph 18 of the Joint Venture Agreement, Plaintiff is entitled to receive all reasonable and documented attorneys' fees and costs incurred in filing this suit. (Exh. A, ¶ 18.)

**SECOND CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Against All Defendants)**

28. Plaintiff realleges and hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 27 as if set forth in full herein.

29. In every contract or agreement there exists an implied covenant of good faith and fair dealing. This means that each party must not do anything to unfairly interfere with the right of the other party to receive the benefits of the contract.

30. As alleged hereinabove, on or about July 1, 2021, Defendant Penhos, through his company, Defendant H2O, entered into the Joint Venture Agreement with Plaintiff. The Joint Venture Agreement is a valid and binding contract enforceable in accordance with its terms.

31. Plaintiff performed, or substantially performed, all of its obligations under the Joint Venture Agreement or was excused from performance as a consequence of H2O's breaches

32. To the extent, if any, that Plaintiff has failed to fulfill any duty under the Joint Venture Agreement, that failure was and is excused by Defendants' misconduct and/or H2O's failure to perform its contractual obligations.

33. All conditions required for H2O's performance under the Joint Venture Agreement have been satisfied, waived, or excused by Defendants' misconduct and/or H2O's failure to perform its contractual obligations.

34. H2O has breached the implied covenant of good faith and fair dealing by interfering with Plaintiff's right to receive the benefits of the Joint Venture Agreement in the manner alleged herein. This includes without limitation, (1) failing to make required capital contributions; (2) commingling funds; (3) failing to devote adequate attention and time to the Venture and/or failing to use commercially reasonable best efforts to achieve the Venture's purpose; (4) failing to keep proper books and records; and (5) refusing to accommodate Plaintiff's request to examine the Venture's books and records.

35. As a direct and proximate result of these breaches, Plaintiff has been damaged in an amount according to proof but in no event less than the jurisdictional minimum of this Court.

//

36. Pursuant to Paragraph 18 of the Joint Venture Agreement, Plaintiff is entitled to receive all reasonable and documented attorneys' fees and costs incurred in filing this suit. (Exh. A, ¶ 18.)

## THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against All Defendants)

37. Plaintiff realleges and hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 36 as if set forth in full herein.

38. Members of a joint venture owe fiduciary duties to one another. As such, H2O owed fiduciary duties to Plaintiff under the Joint Venture Agreement.

39. On information and belief, H2O breached its fiduciary duties to Plaintiff as it relates to the Venture by, among other things, failing to make necessary capital contributions; failing to act in the best interests of the Venture; failing to keep proper books and records; misappropriating capital contributions paid by Plaintiff; and commingling funds.

40. As a direct and proximate result of these breaches, Plaintiff has been damaged in an amount according to proof but in no event less than the jurisdictional minimum of this Court.

41. Pursuant to Paragraph 18 of the Joint Venture Agreement, Plaintiff is entitled to receive all reasonable and documented attorneys' fees and costs incurred in filing this suit. (Exh. A, ¶ 18.)

## FOURTH CAUSE OF ACTION
### Intentional Misrepresentation
### (Against All Defendants)

42. Plaintiff realleges and hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 41 as if set forth in full herein.

43. In or around June 2021, Penhos represented to Plaintiff that he and H2O possessed the necessary knowledge, experience, and resources to execute a successful and profit-generating venture. By virtue of the parties' fiduciary relationship, Penhos

also represented to Plaintiff that he and H2O would act in good faith and in the best interests of the Venture.

44. On information and belief, these representations were false. Plaintiff alleges that Defendants had no intention or ability to perform H2O's obligations in accordance with the Joint Venture Agreement.

45. On information and belief, Defendants knew these representations to be false when made, and intended that Plaintiff rely on the same.

46. And, in fact, Plaintiff reasonably and detrimentally relied on these representations. Defendants' misrepresentations were material, since Plaintiff would not have agreed to enter into the Joint Venture Agreement but for the misrepresentations, and each of them.

47. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount according to proof but in no event less than the jurisdictional minimum of this Court.

48. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights. Because the acts taken toward Plaintiff were carried out by Defendants acting in a despicable, deliberate, cold, callous, and intentional manner in order to injure and damage it, Plaintiff is entitled to recover punitive damages in an amount according to proof.

49. Pursuant to Paragraph 18 of the Joint Venture Agreement, Plaintiff is entitled to receive all reasonable and documented attorneys' fees and costs incurred in filing this suit. (Exh. A, ¶ 18.)

### FIFTH CAUSE OF ACTION
### Negligent Misrepresentation
### (Against All Defendants)

50. Plaintiff realleges and hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 49 as if set forth in full herein.

51. In or around June 2021, Penhos represented to Plaintiff that he and H2O possessed the necessary knowledge, experience, and resources to execute a successful and profit-generating venture. By virtue of the parties' fiduciary relationship, Penhos also represented to Plaintiff that he and H2O would act in good faith and in the best interests of the Venture.

52. On information and belief, these representations were false. At the time said representations were made, Defendants had no reasonable basis for believing them to be true.

53. Defendants negligently made these representations with the intention of inducing Plaintiff to act, and/or with reckless disregard that Plaintiff would so act, in reliance on the representations in the manner herein alleged.

54. Plaintiff was unaware of the falsity of Defendants' representations and, thus, reasonably and detrimentally relied on these representations. Defendants' misrepresentations were material, since Plaintiff would not have agreed to enter into the Joint Venture Agreement but for the misrepresentations, and each of them.

55. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount according to proof but in no event less than the jurisdictional minimum of this Court.

56. Pursuant to Paragraph 18 of the Joint Venture Agreement, Plaintiff is entitled to receive all reasonable and documented attorneys' fees and costs incurred in filing this suit. (Exh. A, ¶ 18.)

### SIXTH CAUSE OF ACTION
### Fraudulent Inducement
### (Against All Defendants)

57. Plaintiff realleges and hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 56 as if set forth in full herein.

58. In or around June 2021, Penhos represented to Plaintiff that he and H2O possessed the necessary knowledge, experience, and resources to execute a successful and profit-generating venture. By virtue of the parties' fiduciary relationship, Penhos

also represented to Plaintiff that he and H2O would act in good faith and in the best interests of the Venture.

59. On information and belief, these representations were false. Plaintiff alleges that Defendants had no intention or ability to perform any obligation under the Joint Venture Agreement. Instead, Defendants aimed to induce Plaintiff to enter into the Joint Venture Agreement so as to obtain and misappropriate monies paid by Plaintiff.

60. On information and belief, Defendants knew these representations to be false when made, and intended that Plaintiff rely on the same.

61. And, in fact, Plaintiff reasonably and detrimentally relied on these representations. Defendants' misrepresentations were material, since Plaintiff would not have agreed to enter into the Joint Venture Agreement but for the misrepresentations, and each of them.

62. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount according to proof but in no event less than the jurisdictional minimum of this Court.

63. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights. Because the acts taken toward Plaintiff were carried out by Defendants acting in a despicable, deliberate, cold, callous, and intentional manner in order to injure and damage it, Plaintiff is entitled to recover punitive damages in an amount according to proof.

64. Pursuant to Paragraph 18 of the Joint Venture Agreement, Plaintiff is entitled to receive all reasonable and documented attorneys' fees and costs incurred in filing this suit. (Exh. A, ¶ 18.)

//
//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor against Defendants, and each of them, as follows:

1. An award of actual, compensatory, consequential, and/or exemplary damages against Defendants in an amount according to proof at trial;

2. All costs of suit incurred herein, including but not limited to attorneys' fees where proper;

3. Pre-judgment and post-judgment interest at the maximum legal rate;

4. For punitive damages as allowed by contract, statute or otherwise;

5. For attorneys' fees as allowed by contract, statute or otherwise;

6. For such other and further relief as the court may deem just and proper.

Dated: September 19, 2023        FREEDMAN + TAITELMAN, LLP


By:   /s/Miles M. Cooley
     Miles M. Cooley, Esq.
     Summer E. Benson, Esq.
     Attorneys for Plaintiff,
     Bellrose Marketing Limited

# JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 19, 2023          FREEDMAN + TAITELMAN, LLP

By:   /s/Miles M. Cooley
     Miles M. Cooley, Esq.
     Summer E. Benson, Esq.
     Attorneys for Plaintiff,
     Bellrose Marketing Limited